UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS TERRELL FREEMAN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>A. MARTIN, et al.,<br><br>　　　　Defendants. | 1:14-cv-00575-LJO-GSA-PC<br>Appeal Case No. 15-15452<br><br>**FINDINGS OF FACT BY DISTRICT COURT**<br><br>**ORDER FOR CLERK TO SERVE THESE FINDINGS ON THE CLERK FOR THE NINTH CIRCUIT COURT OF APPEALS** |

　　　　These findings are submitted to the Clerk of the Ninth Circuit Court of Appeals in response to the Ninth Circuit's directive. On March 3, 2017, the Ninth Circuit issued an order remanding this case to the district court for the limited purpose of determining the date that Appellant, Demetrius Terrell Freeman,[1] delivered his notice of appeal to prison authorities for mailing. (ECF No. 25.) The court was directed to forward its finding to the Clerk of the Ninth Circuit Court of Appeals. (Id.)

**I.　BACKGROUND**

　　　　On April 21, 2014, Demetrius Derrell Freeman, a federal prisoner proceeding *pro se*, filed case number 1:14-cv-00575-LJO-GSA-PC, <u>Freeman v. Martin</u>, at the United States District Court for the Eastern District of California. (Complaint, ECF No. 1.) On October 31,

---

[1] Demetrius Terrell Freeman is referred to as "Plaintiff" in his district court case and "Appellant" in his appeal.

1

2014, the court dismissed the case for Plaintiff's failure to prosecute. (ECF No. 12.) On March 10, 2015, Plaintiff filed a notice of appeal, which was forwarded to the Ninth Circuit and assigned case number 15-15452. (ECF No. 19-21.)

On March 3, 2017, the Ninth Circuit remanded the case to the district court. (ECF No. 25.)

## II. PLAINTIFF'S APRIL 29, 2017, DECLARATION

To determine the date at issue, the court issued an order on March 27, 2017, requiring Plaintiff to file a declaration under penalty of perjury, describing in detail the process he claims he followed when submitting his notice of appeal for mailing at the institution where he was incarcerated at the time. (ECF No. 27.) The court set forth ten questions for Plaintiff to address in the declaration. (Id.) On May 3, 2017, Plaintiff filed the declaration, which he dated April 29, 2017, and signed under penalty of perjury. (ECF No. 30.) Plaintiff provided the following responses to the court's ten questions:

(1) When and how did you find out your case had been dismissed? Where were you housed at the time? What was your reaction?

**Plaintiff:** I found out my case was dismissed while in transit to USP Pollock. I was housed in the transit center in Oklahoma City, Oklahoma.

(2) When did you write the notice of appeal? Did anyone help you write it? If so, who? Did you deliver it for mailing on that same day?

**Plaintiff:** I wrote the notice of appeal in late October 2014, and made mention of it in a motion filed in February, either document 16 or 17. The notice of appeal was referred to as a "motion," of this I am almost certain. (The notice of appeal was written in late October.)

(3) When did you submit the notice of appeal for mailing? Give the date, time of day, day of the week, whether it was a holiday, and any other description of the day.

**Plaintiff:** I submitted the notice of appeal November 1st, 2014, a Saturday.

(4) How did you submit the mail at the institution? If to a staff member or other person, give the title and name. If you don't know the name, give a description of the person.

|  |  |  |
|---|---|---|
| 1 | | Was there any conversation by you or others at the time? Describe. Where were you |
| 2 | | when you submitted the mail? |
| 3 | **Plaintiff:** | I submitted the notice of appeal for mailing by having it placed in the |
| 4 | | institution's "internal mail system" in C-3 housing unit, pursuant to Fed |
| 5 | | R. App. P. 4(a)(1)(A). |
| 6 | (5) | If you did not submit the notice of appeal to a staff member or other person, where and |
| 7 | | how did you deliver it for mailing? Was anyone else present when you delivered it? |
| 8 | | Did anyone know you were going to deliver the mail? Who? What were the |
| 9 | | circumstances? |
| 10 | **Plaintiff:** | Same response as answer 4 verbatim. |
| 11 | (6) | What type of envelope did you use? Was the envelope sealed when you delivered it? |
| 12 | | Was postage affixed? Did you send the notice of appeal by certified mail? |
| 13 | **Plaintiff:** | I used a plain white envelope. Inmates are not allowed to seal envelopes |
| 14 | | unless in front of staff. I do not recall if the envelope was sealed. |
| 15 | (7) | Was the mail opened, scanned, or inspected in your presence? By who? Were you |
| 16 | | given a receipt of any kind? |
| 17 | **Plaintiff:** | The notice of appeal was not scanned, inspected, or opened in my |
| 18 | | presence. There is no receipt system at USP Pollock. Therefore, I was |
| 19 | | not given a receipt. |
| 20 | (8) | What is your general experience with the outgoing mail at USP Pollock? Is it promptly |
| 21 | | mailed out? Any problems or delays you have noticed? Who was working in the |
| 22 | | mailroom at the time you mailed the notice of appeal? Identify by name or description. |
| 23 | | How long does it usually take for outgoing mail to be delivered to the recipient after it |
| 24 | | is delivered at the institution for mailing? |
| 25 | **Plaintiff:** | My general experience with the outgoing mail at USP Pollock is a |
| 26 | | NIGHTMARE! Armenda Boteler is a pathological liar, which covered |
| 27 | | up the actions of C/O Taffi. (Mailroom worker which tampered with my |
| 28 | | |

CERTIFIED legal mail.) C/O Taffi tampered with my certified mail by switching the receipt, and even opened it once it was sealed.

I never received a return receipt because it was in his handwriting, not mine, and the number was factually different. I filled out receipt number 7015 3015 0000 6923 2519. C/O Taffi switched it to 7015 3010 0000 6923 2526. Upon being lied to I wrote the Attorney General (Lynch), and this is when Armenda Boteler began to conspire to cover up C/O Taffi's actions.

Armenda Boteler is a bold face [*sic*] LIAR, alleging a perfect mailroom over the span of 5 YEARS. I believe the above FACTS should jog her selective amnesia.

Furthermore, C/O Taffi was removed from the mailroom at USP Pollock, and sent to the FCI to pack boxes for the multiple problems he caused, as stated by Armenda Boteler.

Armenda Boteler's declaration constitutes PERJURY. Is it a wonder half my property NEVER arrived here. Loretta Lynch and Susan Corcoran are my witnesses.

The mailroom at USP Pollock aside, the mail in Pollock, LA, runs terribly. The mail is often 3 to 4 weeks late, as in looking at the postmark.

I have another witness. I was placed on the out count while addressing the spoken of certified mail issue. I spoke directly with Armenda Boteler. Camera footage and the LT's office outcount log will attest to this.

The certified mail in question went out March 24, 2016. The time period in question would have been within a week of that date.

(9) Were there any safety or security issues at the institution at the time you delivered the mail? Was the institution on lockdown? If so, for what reason and for how long? Was

| | |
|---|---|
|1| there any other reason the outgoing mail would have been delayed?  Do you remember |
|2| anything else about that day? |
|3| **Plaintiff:**    As stated herein I do not recall if the institution was on lockdown.  It was |
|4| on lockdown upon my arrival. Came off lockdown, and went back on |
|5| lockdown shortly thereafter.  There were multiple lockdowns from |
|6| October throughout December. |

(10) Describe in detail any other circumstances you remember about delivering the notice of appeal for mailing?  If you have any evidence supporting your declaration, submit the evidence to the court with the declaration. If you have any witnesses to support your account of what happened, give their names, titles, I.D. numbers, descriptions?  What could they testify to?  You are required to submit any evidence you have or that is available to you, including declarations of witnesses, prison records, and other documentary evidence.

**Plaintiff:**    I am almost certain I was in cell 301, in unit C-3 when I gave the Unit officer the notice of appeal to be deposited in the institution's "internal mail system," on November 1, 2014.  (ECF No. 30 at 3 ¶10.)

This issue pertains to the clerk of court.  I sent the court a criminal complaint, This court, requesting to submit a criminal complaint against C/O A. Martin and several others.  The clerks office stamped the criminal complaint and sent it back twice.  The clerks office stamped it on the reverse side, and even forwarded it to the Inspector General once.  IT WAS NEVER DOCKETED!  And I definitely have a copy.  An original was sent to the appeals court as evidence in an ex parte motion.  As I do not have the appeal docket sheet thanks to Armenda Boteler's overseeing of the mailroom.  The time frame would be within 5 documents of the appellate court asking whether or not I would like pro bono counsel.

Integrity is the ability to remain truthful when your actions cannot be

seen. To the best of my knowledge, as I am being ORDERED to recall events from 3 YEARS ago with specifics, without the necessary documentation. I seriously believe I was in unit C-3 cell 301, and submitted the notice of appeal to the unit officer.

### Witnesses

1) Loretta Lynch (prior attorney general)
2) Susan Corcoran (ACLU-Boston)
3) Camera footage around March 27, 2016
4) LT's office out count around the week of March 27, 2016
5) Appellate Court – Ex Parte Motion (criminal complaint)

## III. PLAINTIFF'S MARCH 26, 2015, DECLARATION

On March 17, 2015, in appeal case number 15-15452, <u>Freeman v. Martin</u>, the Ninth Circuit issued an order requiring Appellant, Demetrius Terrell Freeman, to file a declaration or notarized statement attesting to the date on which the notice of appeal was deposited in the institution's internal mail system and whether first class postage was prepaid, or otherwise show cause why the appeal should not be dismissed for lack of jurisdiction. (Appeal DktEntry No. 3.) On March 26, 2015, Appellant filed a declaration styled as a letter, dated March 19, 2015, attesting that he mailed the notice of appeal no later than November 1, 2014, by placing it in the institutional mail system with first class postage affixed. (Appeal DktEntry No. 4 at 1.)

Plaintiff stated, in part:

[U]pon notice of dismissal of civil action 14-cv-00575-LJO-GSA, I did place in the institution mail system a Notice of Appeal for the above noted civil case, within 4 days of receiving the notice of dismissal, with first class postage affixed. Plaintiff declares that he mailed the Notice of appeal no later than November 1st, 2014. Plaintiff has not listed an exact date as he does not wish to deceive the Court unintentionally. The first available mailing day Plaintiff did mail the notice of appeal. (Plaintiff asserts the above, about no specific date because FBOP wide no mail goes out on Friday, Saturday or Sunday. Any mail deposited in the institutional system after Thursday will not leave the prison until the following Monday.)

(Appeal DktEntry No. 4 at 1.)

Even so, Plaintiff never received the Court's findings and recommendations, as he was in SHU and or transit from early August until October 17, 2014 . . . Also,

6

> even though Plaintiff was unaware of "MAIL RETURNED" docket entry dated 10/17/14, Plaintiff did comply, by sending the Court a change of address notice prior to 12/26/14. Plaintiff has been compliant with court rules, and his case should be reinstated.

(Id. at 2-3.)

## V. DISCUSSION

### A. <u>Plaintiff's May 3, 2017, Declaration</u>

(1) Regarding Plaintiff's May 3, 2017, response to the district court's question #1, Plaintiff declares that he discovered that his case was dismissed when he was in transit to USP-Pollock, while he was housed at the transit center in Oklahoma City, Oklahoma. (ECF No. 30 at 1 ¶1.) Given the evidence before the court, this is not possible, as Plaintiff arrived at USP-Pollock on October 17, 2014,[2] more than ten days <u>before</u> his case was dismissed on October 31, 2014. Therefore, Plaintiff could not have discovered that his case was dismissed when he was in transit to USP-Pollack.

(2) Regarding Plaintiff's response to question #2, Plaintiff declares that he prepared his notice of appeal in late October 2014, and submitted it to the prison for mailing on Saturday, November 1, 2014. (ECF No. 30 at 1 ¶¶2, 3.) Given the evidence before the court, this is highly improbable. Plaintiff could not have known about the dismissal of his case in late October. The case was dismissed on Friday, October 31, 2014, on the same date the dismissal order was mailed to Plaintiff at USP-Beaumont. (ECF No. 12.) This was after Plaintiff had been transferred from USP-Beaumont and arrived at USP-Pollock on October 17, 2014. Even if the court had mailed the order directly to USP-Pollock, where Plaintiff was housed at the time, he could not have received it until after the weekend, until Monday, November 3, 2014, at the earliest. Under these facts, Plaintiff could not have prepared his appeal in late October 2014 and submitted it for mailing on November 1, 2014.

### B. <u>Plaintiff's March 19, 2015, Declaration</u>

Plaintiff declares in his March 19, 2015, declaration, received by the 9th Circuit on March 26, 2015, that he mailed the notice of appeal no later than November 1, 2014, or on "the

---

[2] <u>See</u> Plaintiff's affidavit filed on March 21, 2016, in appeal case no. 15-15452 at the Ninth Circuit. (Appeal DktEntry No. 16 at 2.)

first available mailing day." (Appeal DktEntry No. 4 at 1.) This is also implausible because, as discussed above, Plaintiff could not have known about the dismissal of his case in late October 2014.

In reviewing the district court's record, it shows that Plaintiff's case was not dismissed until October 31, 2014. (ECF No. 12.) Because Plaintiff had not updated his address with the court to show his new address at USP-Pollock, the court served Plaintiff with the dismissal order at USP-Beaumont on October 31, 2014. (Court Record.)

On December 10, 2014, Plaintiff notified the court of his new address at USP-Pollock and filed a motion for a scheduling conference. (ECF No. 14.) There is no evidence in the Plaintiff's motion that he was aware that his case had already been dismissed weeks earlier. In the motion, Plaintiff focuses on his assertion that the court refused to accept a criminal complaint he had submitted and states, "As of yet, no action has been taken in the civil case [and] Plaintiff's next course of action will be to contact his congressman, and the attorney general." (ECF No. 14 at 1.) He refers to the court's order of May 1, 2014, which granted him leave to proceed in forma pauperis, as his last contact with the court, stating, "My last contact with the Court stated in summary that the in forma pauperis, or payments need to be taken care of." (Id.) Plaintiff makes no mention of the dismissal of his case. From these statements, and the absence of any evidence that Plaintiff was aware that his case had been dismissed, the court infers that by late November 2014, Plaintiff had not yet received a copy of the dismissal order.

On December 15, 2014, the court re-served the dismissal order on Plaintiff at his new address at USP-Pollock. (ECF No. 16.) Subsequently, Plaintiff filed a motion on February 6, 2015, in which it appears that Plaintiff <u>was</u> aware that his case had been dismissed. (ECF No. 17.) Significantly, Plaintiff did not file an appeal at this time. In the motion, Plaintiff asserts that he "mailed a previous motion to the Court in response to failure to litigate claims," and argues that his case "should not be dismissed." (ECF No. 17.) Thus, it appears that Plaintiff first discovered that his case had been dismissed sometime between December 15, 2014, and February 3, 2015, the date Plaintiff signed the February 6, 2015, motion.

Turning to both of Plaintiff's declarations, the possibility that it could have taken four

8

months, from November 2014 until March 2015, for the court to receive and file Plaintiff's notice of appeal is not likely.  The United States Postal Service estimates that it takes four business days for mail to travel from Pollock, Louisiana, to Fresno, California. https://www.ups.com/maps/results (last visited May 10, 2017).  Delays can be expected in the prison setting, and Plaintiff has asserted that the mail in Pollock is often received 3 to 4 weeks later than the postmark.  (ECF No. 30 at 3.)  However, four months for mail delivery from Louisiana to California is, again, not likely.  There is no evidence except Plaintiff's self-serving declarations to support the contention that Plaintiff mailed his notice of appeal in November 2014.

Weighing the evidence before the court, it appears that Plaintiff submitted his notice of appeal for mailing at USP-Pollock no more than four weeks before the date it was actually filed at the district court, on March 10, 2015.  Therefore, the court finds that Plaintiff submitted his notice of appeal for mailing at USP-Pollock no earlier than February 9, 2015.

The Clerk is directed to serve these findings on the Clerk of the Ninth Circuit Court of Appeals.

IT IS SO ORDERED.

Dated:     **May 19, 2017**                         **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE